In Re: April Sauers. Commonwealth of Pennsylvania, Department of Public Welfare, Appellant.

Argued May 4, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG and MACPHAIL.

*Mary Alexine Reilly,* for appellant.

*James H. McLean,* County Solicitor, with him *Dennis R. Biondo,* Assistant County Solicitor, for appellee, County of Allegheny, Mental Health/Mental Retardation Program.

Opinion by Judge Blatt, July 30, 1982:

This is an appeal by the Department of Public Welfare (DPW) from an order of the Court of Common Pleas of Allegheny County requiring the DPW to allocate funds to the Allegheny County Mental Health/Mental Retardation Program (County) for the placement of a mentally retarded person, April Sauers, in a community-based residence.

In 1979, April Sauers was committed to an institution for the mentally retarded pending the County's development of a community-based residential program which would provide a setting more appropriate for her needs. In March of 1980, the proposed County program was submitted to the DPW for its approval, but no response was ever received. In December of 1980, during a review of the commitment, the court below determined that both the County and the DPW agreed that the proposed community residential program was the most appropriate treatment for April Sauers and ordered the DPW to provide funding for the implementation of that program. This appeal followed.

The DPW argues that the court below lacked subject matter jurisdiction in this matter inasmuch as all actions against the Commonwealth such as this must be brought before the Commonwealth Court. Section 761(a) of the Judicial Code, 42 Pa. C. S. §761(a).

Clearly, however, the court below had exclusive jurisdiction to decide the petition for the commitment, care and treatment of the mentally retarded, Section 4406 of the Mental Health and Mental Retardation Act (Act), Act of October 20, 1966, Spec. Sess., P.L. 96, 50 P.S. §4406, and the DPW, although it requested and was granted permission to intervene in the commitment proceeding here, did not at that time raise any objection to the common pleas court's jurisdiction to adjudicate any issues involving the Commonwealth, and it fully participated in the subsequent hearings. We have previously held that the nature of this Court's jurisdiction over matters involving the Commonwealth is considered to be "in personam" and is therefore waivable by the Commonwealth. *Demetriou v. Carlin*, 47 Pa. Commonwealth Ct. 478, 408 A.2d 565 (1979), and, inasmuch as the DPW did not challenge the jurisdiction of the court below at the appropriate time, we will consider it to have waived any objection which it may have had thereto.

The DPW further maintains that, because the funds available for Mental Health/Mental Retardation programs are limited, the order of the court below would have the practical effect of decreasing the grants for mental health programs operated by other counties and that those counties should have been joined as indispensable parties, citing *Mechanicsburg Area School District v. Kline*, 41 Pa. Commonwealth Ct. 371, 399 A.2d 1136 (1979). Our decision in *Mechanicsburg*, however, was reversed by our Supreme Court in *Mechanicsburg Area School District v. Kline*, 494 Pa. 476, 431 A.2d 953 (1981), which held that, where a school district seeks a recalculation and increase of its subsidy payments from the Department of Education, other school districts are not indispensable parties unless the record demonstrates that the statutory appropriation had already been reached and

that the subsidies of the other districts would be directly affected by the requested increase. In the present case, the DPW advances the assertion that complying with the order of the court below would require a reduction in funding to other counties, but it points to no evidence in the record to support that conclusion and our own review of the record reveals none. In the absence of a showing that DPW's compliance with the order in this case would adversely affect other counties, we cannot say that there was a failure here to join them as indispensable parties.

Finally, the DPW contends that the lower court erred in concluding that the DPW, rather than the County, had the financial responsibility for the care and placement of April Sauers. It relies upon our Supreme Court's decision in *In Re Schmidt*, 494 Pa. 86, 429 A.2d 631 (1981), to support its conclusion that the County, not the DPW, had the obligation to provide the appropriate program, where, as here, placement in an institution was not necessary.

It is true that the Supreme Court in *Schmidt* stated:

> We fully agree with the court below that the legislative scheme was designed to require the county to provide those supportive services where they would eliminate the necessity of institutionalization, even where those services would be required on a long term basis.

*Id.* at 95, 429 A.2d at 635-6. The Court also made clear, however, that its decision was not a determination as to which governmental unit would ultimately bear the cost for providing the necessary services, citing Sections 4508 and 4509 of the Act, 50 P.S. §§4508 and 4509.[1] In the instant case, the County has

---

[1] Sections 4508 and 4509 provide:
§4508. Relief of county from obligation to insure services; State's obligation; liability in such cases

undertaken to establish an appropriate program for April Sauers, consistent with its obligation under *Schmidt*, and the controversy now before us centers upon who should pay for that program under the Act, a question which *Schmidt* did not resolve.

---

(a) If local authorities cannot insure the availability of any of the services required by section 301, or if they assert that it would be economically unsound to do so, such authorities may make application to the department to be relieved for the period of one year from the duty to insure their availability.

Such application shall specify: (i) the service or services involved and (ii) facts upon which it seeks relief.

(b) If the department after consideration of the application and such independent investigation as it shall deem appropriate determines that the application is justified, it may approve the same, in which event, the department may insure the availability of the service or services specified in the application, for the year specified in the application.

(c) When the department provides said service or services under this section, the liability shall be apportioned in accordance with the appropriate formula determined in accordance with section 509(1).

(d) Local authorities may make successive application hereunder.

§4509. State grants and payments

The department, subject to the provisions of section 503, shall have the power, and its duty shall be:

(1) From State and Federal funds, to make annual grants to counties to defray part of the cost of county programs authorized by this act and approved by the department, in the amount of ninety per cent of the excess of all such approved expenditures for such programs over the amount paid for the same purpose from any public or private source directly to participating counties, facilities or individuals.

(2) To prescribe the time at which the counties shall submit to the department annual plans and annual estimates of expenditures, and revisions thereof, to carry out mental health and mental retardation programs. Such

The court below examined the legislative history, and sections 4508, 4509 and other sections of the Act, as well as the DPW's regulations, in reaching its deter-

plans and estimates shall contain such information as the secretary by regulation shall prescribe.

(3) Upon approval of an annual plan and the estimated expenditures for a mental health and mental retardation program, to compute an annual grant in accordance with the formula established in clause (1) of this section.

(4) To pay the annual grant in four quarterly installments. The moneys received in any quarter may be used at any time during the year. The first installment shall be for the quarter beginning July 1 and ending September .30; the second installment shall be for the quarter beginning October 1 and ending December 31; the third installment shall be for the quarter beginning January 1 and ending March 31; and the fourth installment shall be for the quarter beginning April 1 and ending June 30. Each installment shall be paid at the beginning of the quarter only if the department is satisfied that the county is complying with the regulations of the department prescribing minimum mental health and mental retardation services, minimum standards of performance of mental health and mental retardation services and minimum standards of mental health and mental retardation personnel administration on a merit basis.

(5) In the event that sufficient funds to pay the full amount of the grants to which the counties may be entitled under the provisions of this section have not been appropriated, to distribute State funds among the counties by a formula reasonably designed to achieve the objectives of this act, provided however, that in such event the counties' financial obligations under this act shall be reduced in accordance with the same formula and the counties shall be required to provide only those services for which sufficient funds are available.

(6) To review grants against actual expenditures at any time and to make appropriate adjustments in subsequent grants. If a grant overpayment cannot be recovered through such an adjustment for any reason, the department shall effect a refund of such overpayment from the county.

mination that the DPW and not the County was financially responsible for April Sauers, and its opinion stated:

There is little ambiguity, either in the rather spare legislative history of the act or in the statutory language, about which governmental entity bears the lion's share of *financial responsibility* for providing mental health services. State Senator Pechan, speaking on behalf of supporters of the proposed Act recognized that

"[t]he financial burden of caring for the mentally ill and retarded rests largely on the State now, and will continue to do so under the new Act."

\* \* \*

"The State will also bear the cost of institutional care of the mentally retarded [and] ... will also bear the major share of the cost of other services...."

1966 Pa. Legis. J., 3d Spec. Sess. — No. 34, 76-77, (Sept. 27, 1966). Another supporter added, "By putting this fiscal burden on the shoulders of the Commonwealth, with its broader fiscal revenues and sources of money, I think, is going to make a much better workable plan, because it means the money will be there." *Id.* at 79.

Several sections of the Act expressly apportion the financial liability for provision of men-

---

(7) For the purpose of this act, the contribution with respect to services, equivalent to the employer's tax established by the Federal Social Security Act shall be the first obligation against any State funds received by the counties for their use or authorized under this act and shall first be paid therefrom.

tal health services. Section 507, 50 P.S. §4507, requires the Commonwealth to pay the entire cost of certain mandated programs. Section 509, 50 P.S. §4509(1), obligates the Commonwealth to defray 90% of the cost of county programs authorized by the Act. Section 510, 50 P.S. §4510, authorizes the Department to make supplemental grants to the counties to assist them in meeting their obligations under approved plans. Additionally, there is statutory machinery which authorizes county administrators to apply for relief from their financial liabilities under Section 301, 50 P.S. §4301, when it would be economically unsound to hold them to their obligations. 50 P.S. §4508. Moreover, sections 508, 510 and subsection (5) of 509 of the Act all contemplate the possibility that unbudgeted, unappropriated fiscal demands might be made on the State Treasury to pay for the essential services which the Act requires the Commonwealth to provide under Section 201, 50 P.S. §4201(1). Finally, regulations promulgated under the authority of Section 201, 50 P.S. §4201, direct the Department to participate at 100% of the approved expenditures for, *inter alia*, "[i]nterim care of the mentally retarded ... [and] [c]ommunity living arrangements for the mentally retarded." Department of Public Welfare, Fiscal Manual, Title 6100 MH/MR, Section 6111.1(3) and (4) (July, 1978). [8 Pa. B. 1684].

....

The Department, by the authority of its own regulations, is obligated to fund community living arrangements. The proposal submitted by the County is manifestly a community living arrangement, albeit a highly specialized one.

The issue here, therefore, must be resolved adversely to the Department's assertion that the County is financially liable for the implementation of the proposed treatment plan.

We can find no fault with this reasoning or with the result reached by the court below, and we will therefore affirm its order.

### ORDER

AND Now, this 30th day of July, 1982, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.