**Cynthia ALESSI, By her parents and next friends Richard ALESSI and Enola Alessi, Plaintiffs,**

**v.**

**COMMONWEALTH OF PENNSYLVA-NIA, DEPARTMENT OF PUBLIC WELFARE and John White, Secretary of the Department of Public Welfare, Defendants.**

Civ. A. No. 88–9668.

United States District Court,
E.D. Pennsylvania.

March 27, 1989.

Dennis C. McAndrews, Wayne, Pa., for plaintiffs.

Gwendolyn T. Mosley, Deputy Atty. Gen., Office of the Atty. Gen., Harrisburg, Pa., for defendants.

### MEMORANDUM

KATZ, District Judge.

The parents of Cynthia Alessi, a blind and mentally retarded young woman, brought this civil rights action on her behalf to obtain the state funding that is essential to her placement in a private residential facility. Plaintiff asks this Court for a preliminary injunction ordering Ms.

Alessi's immediate placement at either the Royer–Greaves School for the Blind or the Elwyn Institute. Because I find that Ms. Alessi has a property interest receiving adequate services suitable to her needs, I will grant the preliminary injunction.

The stipulated facts[1] are as follows:

1. Cynthia Alessi is a profoundly mentally retarded and legally blind young woman; in addition to suffering from profound mental retardation and blindness, Ms. Alessi has a congenital heart defect, is hyperactive, has an active seizure disorder, and experiences significant behavioral difficulties.

2. From 1978 through June, 1986, Cynthia resided at the Royer–Greaves School for the Blind ("Royer–Greaves"), pursuant to an education placement provided by the Haverford School District and the Pennsylvania Department of Education.

3. During her eight-year stay at Royer–Greaves, Ms. Alessi made significant gains for a person with her disabilities, and had become happy, emotionally stable, non self-abusive, and toilet trained.

4. At the conclusion of Ms. Alessi's educational entitlement in June of 1986, Ms. Alessi was sent home to her parents. Under applicable federal and state educational statutes and regulations, Ms. Alessi's entitlement to educational services terminated the last day of June following her twenty-first (21st) birthday. 20 U.S.C. § 1412(2)(B); 34 C.F.R. § 104.3(K)(2), 300.-300; 24 P.S. § 13–1371; 22 Pa.Code § 13.1, 341.1.

5. During the time period from her June, 1986 discharge from the Royer–Greaves School to the present time, Ms. Alessi has lost virtually all of the training which she gained during her eight years at Royer–Greaves. For example, Ms. Alessi now engages in self-abusive and self-stimulatory behaviors, has lost all of her toilet training skills, has lost most of the minimal sign language that she had acquired at Royer–Greaves, and has become less physically active and is overweight. During this

1. The parties submitted stipulated facts to the Court.

same time period, Ms. Alessi has increasingly awakened with greater frequency during the middle of the night, and engaged in screaming and self-abusive or self-stimulatory activity.

6. Inasmuch as Ms. Alessi's parents realized that Cynthia's educational entitlement would end in June, 1986, the Alessis made application to the other mental retardation residential facilities through the Delaware County Mental Health and Mental Retardation Administration during the two years prior to June of 1986. These applications were made to facilities known as Intermediate Care Facilities for the Mentally Retarded ("ICF/MR"), which are federally funded facilities for the mentally retarded. However, the facilities contacted could not provide the full range of services which Cynthia needed and did not accept her.

7. The Royer–Greaves School continued to be willing and able to provide services to Ms. Alessi. If called to testify at a hearing in this matter, a representative of the Delaware County Mental Health/Mental Retardation Administration ("MH/MR Administration") would testify that the MH/MR Administration was unable to provide these services, due to the receipt of inadequate funds from the Department of Public Welfare ("Department") to provide residential services to all mentally retarded persons in Delaware County who required them.

8. In October, 1986, Cynthia Alessi's parents petitioned for the involuntary commitment of their daughter to an appropriate mental retardation residential facility pursuant to Section 406 of the Pennsylvania Mental Health and Mental Retardation Act, 50 P.S. § 4406. Neither the Department of Public Welfare nor any of its officials or employees was made a party to the involuntary commitment proceeding, although notice of the proceeding was given. Therefore, no one from the Department was present or had any involvement in that proceeding.

9. At the conclusion of the commitment hearing, the Honorable Robert A. Wright of the Court of Common Pleas of Delaware County ordered that Cynthia Alessi be committed to the Royer–Greaves School at the expense of the Department of Public Welfare.

10. The Department of Public Welfare appealed from this Order, and the Commonwealth Court quashed the Department's appeal. *Commonwealth v. Alessi*, 105 Pa.Commw. 453, 524 A.2d 1052 (1987).

11. Although the October, 1986 Commitment Order of the Delaware County Court of Common Pleas was not withdrawn or modified following the Commonwealth Court decision quashing the Commonwealth's appeal, the Department of Public Welfare did not comply with this Order and, after hearings in June and July of 1987, was held in contempt by the Delaware County Court of Common Pleas on August 31, 1987.

12. The Department of Public Welfare appealed from this contempt order, and on August 24, 1988, the Commonwealth Court reversed the trial court's contempt order. *Commonwealth v. Alessi*, 119 Pa.Commw. 160, 546 A.2d 157 (1988).

13. In May, 1988, plaintiff filed a civil rights action for declaratory and injunctive relief and damages against the Department of Public Welfare, Secretary White, and two officials of the Department in the Court of Common Pleas of Delaware County to obtain a residential placement. The action alleged a violation of Cynthia Alessi's rights under the Due Process Clause of the Fourteenth Amendment and was brought under 42 U.S.C. §§ 1983 and 1985. Plaintiff filed a motion for a preliminary injunction at the same time the complaint was filed. A hearing on the motion for a preliminary injunctive relief was held on June 9, 1988. At that hearing, the Department raised preliminary objections challenging, *inter alia*, the jurisdiction of the Delaware County Court of Common Pleas to determine claims against Commonwealth officers for declaratory and injunctive relief brought under 42 U.S.C. § 1983 and § 1985. On November 28, 1988, the Delaware County Court sustained the Department's objections relating solely to the claims for declaratory and injunctive relief under 42 U.S.C. §§ 1983 and 1985 and dismissed the remaining objections. Plain-

tiff's claims for damages under § 1983 and 1985 against the defendants are pending in the Delaware County Court.

14. If called to testify at a hearing in this matter, Dr. Dorrie Rapp, Kathleen Moffa of the Delaware County MH/MR Administration, Anna Perry of the Royer–Greaves School and Dr. William Keilbaugh of the Haverford School District would testify in a manner consistent with their testimony at the October 28, 1986 commitment hearing in the Delaware County Court of Common Pleas; a copy of said testimony is attached to the plaintiff's Motion for Preliminary Injunction.

15. If called to testify at a hearing in this matter, Anna Perry and Richard Alessi (the parent of Cynthia Alessi) would testify in a manner consistent with their testimony at the June 3, 1987, and July 22, 1987 contempt hearings in the Court of Common Pleas of Delaware County.

16. If called to testify at a hearing in the instant matter, Anna Perry and Mrs. Enola Alessi (the mother of Cynthia Alessi) would testify in a manner consistent with their testimony at the October 1, 1987 hearing to remove an automatic supersedeas obtained by an appeal by the Department of Public Welfare from the Order of the Court of Common Pleas of Delaware County of August 28, 1987, which held the Department of Public Welfare in contempt.

17. If called to testify at a hearing in the instant matter, Dr. Dorrie Rapp would testify in a manner consistent with the reports and curriculum vitae attached to the plaintiff's Motion for Preliminary Injunction. In particular, Dr. Rapp would testify that Cynthia Alessi has regressed seriously since she was forced to leave the Royer–Greaves School and enter a day program, and that if allowed to remain at home with a minimal day program, Cynthia may regress to the point where she will never be able to regain basic skills.

18. At the involuntary commitment hearing of October 28, 1986, exhibits were accepted by the trial court without objection; if the makers of said reports and/or authenticating witnesses thereon were called to testify at a hearing in this matter,

their testimony would establish facts consistent with said reports, and would establish the authenticity of such reports.

19. If Mr. Richard Alessi or Mrs. Enola Alessi were called to testify in a hearing in this matter, he/she would testify that the condition of Cynthia Alessi has continued to deteriorate since the creation of videotape affidavit of May and June, 1988. Mr. and Mrs. Alessi further would testify that Cynthia has become increasingly self-abusive during the time period since June, 1988, and that she is regularly unable to sleep, arising in the middle of night for hours, and engaging in screaming and attention-demanding behavior.

20. The Royer–Greaves School or the Elwyn Institute are the only programs known to the plaintiffs which currently can accept Cynthia Alessi and provide appropriate residential treatment for her condition.

21. The Delaware County MH/MR Administration has been provided inadequate funds during the fiscal years for all relevant times since the discharge of Cynthia Alessi from the Royer–Greaves School in June, 1986, to provide a proper residential treatment program to all mentally retarded citizens of Delaware County in need of such residential treatment. Indeed, the Department of Public Welfare has reduced the most recent quarterly payment to the Delaware County MH/MR Administration from previous allocations.

22. The resources of Cynthia Alessi and her family will be made available to pay for the treatment of Cynthia Alessi to the full extent mandated by current and future Pennsylvania or federal law.

23. Cynthia Alessi's condition meets all the legal standards for voluntary or involuntary residential treatment under Pennsylvania law.

24. Each year the Department allocates funds to each county and requires the counties to assess the relative needs of their residents. Through the county mental retardation program, trained mental retardation professionals can evaluate the need of a particular individual in comparison to the needs of other individuals, con-

sidering resources made available to that county. The Department takes no direct role in the identification of county residents in need of county mental retardation services or in the provision of services to those individuals.

25. For this fiscal year (1988–89), as in the past few years, the General Assembly has at the request of the Department, appropriated separate funds to the Department for state centers, community residential services, and community non-residential services. In addition to these funds, the General Assembly appropriated state and federal Medicaid funds for ICF/MRs.

26. ICF/MRs are residential facilities which are specially licensed as such pursuant to federal and state criteria. The state institutions are ICF/MRs. Exclusive of these, typically ICF/MRs are privately operated. Using federal and state funds which are separately appropriated the state directly reimburses an ICF/MR for each person cared for in the facility who is an eligible medical assistance recipient. Admission to a private ICF/MR is controlled exclusively by the facility itself.

27. The appropriations for the state centers and for Medicaid ICF/MRs are administered directly by the Department of Public Welfare. The Department at its discretion allocates the funds appropriated in the other categories—community residential services and community non-residential services—as grants to the counties.

28. For this fiscal year, the available community residential services funds were initially divided up by the Department in its discretion among the counties and each county was allocated a specific sum. Delaware County was allocated $11,359,331 for community residential services by the Department.

29. The Department has not paid Delaware County and other counties the amounts that were allocated to them for the fourth quarter of this fiscal year. The Department is unable to make its intended fourth quarter payments to Delaware County and the other counties because it has been ordered by Judge Broderick of the United States District Court for the Eastern District of Pennsylvania to pay Philadelphia County five million dollars more than the amount of its allocation to provide mental retardation services to its residents pursuant to a lawsuit at No. 88–5305.

30. Because compliance with this court order reduces the amount available for allocation by five million dollars, the Department will reduce the payments to all counties except Philadelphia in the fourth quarter of this fiscal year.

31. A result of the five million dollar payment to Philadelphia is that there is no money available through Department funding to Delaware County or to any other county to expand programs. Under the present status of funding from the Department, counties are using funds available for community residential programs to pay for existing services.

32. For the current fiscal year (1988–89), the Department has no state or federal funds which have not been committed for allocations to the various counties which could be used to give additional funds to Delaware County for provision of community residential services to Cynthia Alessi. Delaware County has always been free to use the funds which it receives in allocations from the Department to provide community residential services to Cynthia Alessi. Delaware County is free to use the funds which it will receive from the Department in the fourth quarter to provide community residential services to Cynthia Alessi.

33. If the Department were required to provide Delaware County with additional funds for provision of services to Ms. Alessi, the Department takes the position that it would have to reduce the amount of community residential funds it has allocated to some or all of the other counties. It is the Department's belief that such a process could result in a reduction or elimination of services to some of the clients being served by other counties.

34. It is the Department's position that any court order requiring the Department

to pay for services for particular individuals severely disrupts the Department's ability to plan and to coordinate the equitable distribution of services to the mentally retarded throughout the state. Compliance with such orders requires redistribution of available funds which the Department accomplished by reducing the allocation to all other counties. This reduction in turn, results in diminishing the counties' abilities to maintain existing services to their current clients.

## DISCUSSION

The tragic issue before the Court is whether the Commonwealth of Pennsylvania must use its scarce resources to provide appropriate residential treatment for a profoundly retarded and blind woman.

For eight years plaintiff made progress at the Royer–Greaves School for the Blind ("Royer–Greaves School"). When she reached the age of twenty-one, however, Ms. Alessi's educational entitlement ended and she was sent home. Although the Royer–Greaves School is willing and able to provide continuing services for Ms. Alessi, the Commonwealth of Pennsylvania has refused to pay for them. Since her removal from the facility that was helping her, Ms. Alessi has continued to suffer horrible degeneration.[2] All available professional assessments demonstrate Ms. Alessi's critical and immediate need for institutionalization of the type provided by such institutions as the Royer–Greaves School or the Elwyn Institute. Unless she receives the care that she so desperately needs, Ms. Alessi will withdraw completely and spend her days endlessly rocking herself back and forth. When provided with appropriate care, in contrast, Ms. Alessi is able to perform useful activities such as dressing and feeding herself, finding her way around and actually working at simple vocational tasks involving skills such as sorting.

The state courts consistently have turned away plaintiff's claims. *Commonwealth v. Alessi*, 105 Pa.Commw. 453, 524 A.2d 1052 (1987); *Commonwealth v. Alessi*, 119 Pa.

Commw. 160, 546 A.2d 157 (1988). Her last state court rejection occurred on November 28, 1988; Ms. Alessi now turns to this Court for relief.

### Eleventh Amendment Immunity

Before reaching the substantive issues presented in this case, I will address the defendants' claim of sovereign immunity under the Eleventh Amendment. The Eleventh Amendment prohibits suits in federal court in which the State itself is named as a defendant. *See, e.g., Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under *Ex Parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908), however, a suit challenging the constitutionality of a state official's action is not one against the State and thus may be brought in federal court, although the court's power to grant relief is limited. *See also Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). "[W]hen a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief." *Pennhurst II*, 465 U.S. at 102–03, 104 S.Ct. at 909. Finally, the Eleventh Amendment prohibits a federal court from granting any form of relief, whether it is retroactive or prospective, against a state for violations of *state* law. *Pennhurst State School and Hospital v. Halderman* ("*Pennhurst II*"), 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

In the case at bar, Cynthia Alessi has alleged a violation of *federal* law; specifically, she claims that the Commonwealth of Pennsylvania and its officials have deprived her of a protected property interest in adequate treatment without the due process of law required by the Fourteenth Amendment. Ms. Alessi requests that this Court grant prospective injunctive relief directing both the Commonwealth of Pennsylvania and John White, the Secretary of the Department of Public Welfare, to refrain from violating her federal due

---

2. *See, e.g.,* the video tape affidavit made part of this preliminary injunction record.

process rights. I find that Ms. Alessi's claim against the Commonwealth is barred by the Eleventh Amendment;[3] her claim against John White, Secretary of the Department of Public Welfare, however, is not barred.

### Abstention

■ Defendants further argue that I must abstain from deciding this case under the doctrines of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). I will not abstain.

First, "[u]nder *Younger*, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *United Services Auto Ass'n v. Muir*, 792 F.2d 356, 365 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987) (quoting *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984)). In the case currently pending between plaintiff and defendants in the Delaware County Court of Common Pleas, the court has sustained defendants' jurisdictional objections and dismissed plaintiff's claims for declaratory and injunctive relief; only plaintiff's damage claim remains. Plaintiff thus cannot assert her federal claim for injunctive relief in the pendent state court proceeding. As a result, *Younger* abstention is inapplicable.

Second, "federal courts need not abstain on *Pullman* grounds when a state statute is not 'fairly subject to an interpretation which will render unnecessary' the federal constitutional question." *Ky. West Virginia Gas Co. v. Pa. Public Utility Co.*, 791 F.2d 1111, 1118 (3d Cir.1986) (quoting *Hawaii Housing Authority*, 467 U.S. at 236, 104 S.Ct. at 2327). In the case *sub judice*, the meaning of the state statute involved is clear both from the statutory language itself and from the definitive interpretations provided by the Pennsylvania Supreme Court. Therefore, *Pullman* abstention also is inapplicable. I now will consider the merits of plaintiff's motion for a preliminary injunction.

### Due Process of Law

When a plaintiff alleges a deprivation of life, liberty or property without due process of law, the court must apply the two-step analysis set forth by the Supreme Court. *E.g., Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). First, the court must determine whether the plaintiff has a constitutionally cognizable life, liberty or property interest that is threatened by government action. *Id.* Second, if a protected right is found, the court must determine what protective procedure is due before the state may deprive the plaintiff of that right. *Id.*

■ Property interests do not exist in the constitution itself, but are created and defined by existing rules that stem from an independent source such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [S]he must, instead, have a legitimate claim of entitlement to it." *Id.*

■ The Pennsylvania Mental Health and Mental Retardation Act of 1966 (the "Act") mandates that the Department of Public Welfare ("Department") "assure within the State the availability and equitable provision of adequate ... mental retardation services for all persons who need them...." 50 Pa.Stat. § 4201(1). In *In re Schmidt*, 494 Pa. 86, 98, 429 A.2d 631 (1981), the Pennsylvania Supreme Court made clear that the Act requires the Department to "to provide adequate mental retardation services for persons in need of them" and that where a mentally retarded plaintiff clearly demonstrates her need for

---

**3.** The Commonwealth's Motion to Dismiss was denied by this Court with leave to renew following the parties' submission of further materials to the Court. On the basis of the record now before me, it appears that such a renewed motion would be granted.

services, the State must respond.[4] The Pennsylvania Supreme Court has further held that the Department of Public Welfare is required to allocate funds to county mental retardation programs for placement of mentally retarded persons in community based residences. *In re Sauers,* 68 Pa. Commw. 83, 447 A.2d 1132 (1982) (en banc), *aff'd,* 500 Pa. 342, 456 A.2d 987 (1983).

The mandatory language of the Act, together with its interpretation by the state Supreme Court, demonstrate that Cynthia Alessi has more than a mere expectation of adequate services. I find that Cynthia Alessi has a legitimate expectation, and thus a protectible property interest, in mental retardation services adequate for her needs.

Once it is determined that Ms. Alessi has a protectible property interest in receiving adequate treatment, this Court must determine "what process is due." *E.g., Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Ransom v. Marrazzo,* 848 F.2d 398, 409 (3d Cir. 1988). "The touchstone of due process is the protection of the individual against arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974).

■ The Commonwealth need not create a system of benefits for the mentally retarded. Having chosen to extend the right to adequate treatment to persons in Ms. Alessi's position, however, it may not be withdrawn in the absence of procedures that are fundamentally fair. *E.g., Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975); *Block v. Potter,* 631 F.2d 233, 236 (3d Cir.1980); *Winsett,* 617 F.2d 996 (3d Cir.1980) (en banc); *Hixon v. Durbin,* 560 F.Supp. 654, 661 (E.D.Pa. 1983). "While the legislature may elect not to confer a property interest, ... it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safe-

guards." *Vitek v. Jones,* 445 U.S. 480, 490 n. 6, 100 S.Ct. 1254, 1262 n. 6, 63 L.Ed.2d 552 (1980) (quoting *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed. 2d 15 (1974) (Powell, J., concurring)).

■ I find from the testimony a substantial likelihood that the system utilized by the Secretary to obtain and distribute funds for the mentally retarded is an irrational one. The testimony established that it is the policy and practice of the Secretary of the Department of Public Welfare to intentionally close his eyes to reality and knowingly request a total annual budget of less funding than is necessary for the adequate residential care of mentally retarded persons in Pennsylvania. In reliance on the Secretary's understated request, the Governor requests insufficient funds from the Legislature for care of the mentally retarded. Thus, the Secretary's practice necessarily precludes the mentally retarded from receiving the funding they desperately need and I find that it is arbitrary.

The testimony further established that the Secretary utilizes an arbitrary method of allocating the budgeted funds among the counties. Essentially, funding allocation is based on each county's past expenditures (plus an arbitrary increase for all counties), rather than on an individual determination of each county's current needs for the particular fiscal year. In effect, the Secretary's methodology, policy and practice is to deny adequate provision for Cynthia Alessi's needs without giving her case any meaningful consideration.

I will provide the parties with a full opportunity to develop a complete factual record as to the Secretary's policy and practice of requesting and distributing benefits to the mentally retarded by issuing a ninety (90) day discovery order, and I will grant the plaintiff leave to amend her complaint to join Delaware County as a defendant.

---

4. This Court notes that "[a]n entitlement may exist with respect to a benefit which is sought but not yet obtained whenever state law limits the exercise of discretion by the state official responsible for conferring the benefit." *Hixon*

*v. Durbin,* 560 F.Supp. 654, 659 (E.D.Pa.1983); *Winsett v. McGuinnes,* 617 F.2d 996 (3d Cir. 1980) (en banc) *cert. den.,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981).

The narrow question presently before this Court is whether to grant a preliminary injunction.[5] If I refuse to grant relief, Cynthia Alessi will suffer the irreparable injury of continuing to regress from a human being to a body incapable of much more than rocking itself back and forth. Cynthia's family cannot afford the expense of residential care, and without it she may regress to the point where she will never be able to regain basic skills.[6] In addition, I credit Mr. Alessi's testimony that Cynthia may injure herself if I fail to grant relief. If I grant relief, the Secretary of the Department of Public Welfare will have to allocate scarce resources to her care. Although the likelihood of plaintiff's success on the merits is difficult to evaluate, it is sufficiently high to justify preliminary relief. Where the injury that would stem from a refusal of relief is as devastating as the one presented here, the likelihood of ultimate success on the merits need not be a certainty. If plaintiff ultimately wins her case, what will it avail her if she regresses so far that she can no longer function as a person? In addition, a strong public interest, recognized by the Commonwealth, exists in preserving the humanity of retarded persons. Balancing the factors discussed above, I will issue a preliminary injunction so that if Cynthia Alessi ultimately wins her case she may continue to exist as a human being.

An appropriate order follows.

### ORDER

AND NOW, this 27th day of March, 1989, upon consideration of the plaintiff's Motion for a Preliminary Injunction and the defendants' response and after a hearing, it is hereby ORDERED that John White, Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, shall facilitate the immediate appropriate residential mental retardation treatment of Cynthia Alessi at either the Royer–Greaves School for the Blind or the Elwyn Institute, contingent upon the admission of Ms. Alessi to one of the above-listed institutions and contingent upon Delaware County's identification of Ms. Alessi as a county resident to receive such treatment, by paying additional funds from an annual grant forthwith to Delaware County to defray those costs. This Order shall continue in full effect until modified by further Order of this court.

This Preliminary Injunction shall issue upon the applicant's providing security in the sum of $12,500 for the payment of such costs and damages as may be incurred or suffered by defendants if they are found to have been wrongfully enjoined.

---

5. Among the factors to be considered in deciding whether to issue a preliminary injunction are: (1) the probability of irreparable injury to the moving party in the absence of relief; (2) the possibility of harm to the non-moving party if relief is granted; (3) the likelihood of success on the merits; and (4) the public interest. *E.g.,* *United States v. Price,* 688 F.2d 204, 211 (3d Cir.1982).

6. *See* Psychological Evaluation by Dr. Dorrie Rapp at 3, incorporated into the Stipulated Facts submitted by the parties.