583 A.2d 1248

### In re FREDERICK F.

### Appeal of ALLEGHENY COUNTY DEPARTMENT OF MENTAL HEALTH/MENTAL RETARDATION/DRUG AND ALCOHOL ABUSE.

Superior Court of Pennsylvania.

Argued Oct. 23, 1990.

Filed Dec. 26, 1990.

---

Timothy W. Pawol, Pittsburgh, for appellant.

Mark Murphy, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and JOHNSON and MONTGOMERY, JJ.

CIRILLO, President Judge.

Allegheny County Department of Mental Health/Mental Retardation/Drug and Alcohol Abuse ("MH/MR") appeals from an order of the juvenile court denying MH/MR's petition for involuntary civil commitment under Section 4406 of the Mental Health and Mental Retardation Act of

1966 ("MH/MR Act")[1] and directing MH/MR to provide residential placement for a dependent juvenile who is also mentally retarded and mentally ill, pursuant to Section 6357 of the Juvenile Act.[2] *See* 42 Pa.C.S. § 6357. We affirm.

The factual and procedural history of the case is as follows. Frederick F., the juvenile in question, is a 16 year old boy suffering from both mild mental retardation, atypical psychosis, and oppositional defiant disorder. As a result of his multiple diagnoses, Frederick F. received both in-patient and out-patient psychiatric treatment and had several out-of-home placements with foster families as well as with private juvenile agencies. In 1986 Frederick F. was adjudicated dependent pursuant to section 6302 of the Juvenile Act.[3] In July of 1988, Frederick F. was involuntarily committed to Mayview State Hospital for treatment of his psychotic behavior. On December 4, 1989, in light of the remission of Frederick F.'s psychosis, MH/MR presented a petition for civil commitment under section 4406 of the MH/MR Act.[4] In an effort to find appropriate placement for Frederick Frederick F. the juvenile court, the Honorable Joseph A. Jaffee presiding, held two hearings. On January 19, 1990, Judge Jaffee entered an order denying the commitment petition and requiring MH/MR to develop and fund "an appropriate community residential placement" for Frederick F.[5]

1. 50 P.S. § 4406.

2. 42 Pa.C.S. § 6301 *et seq.* We note that the juvenile court properly held that Allegheny County is the true party in interest in this matter. The Honorable Joseph A. Jaffee, in his opinion in support of his order, held that "[i]f MH/MR, in fact, cannot fund an appropriate placement, C & YS (Children and Youth Services) will be required to do so." MH/MR and C & YS are both county agencies who share responsibility for Frederick F.'s welfare based upon his status as a dependent juvenile with mental retardation and mental illness problems.

3. 42 Pa.C.S. § 6302.

4. Pursuant to 50 P.S. § 4406, the Commonwealth, rather than the county, is the entity responsible for long-term residential care and placement of the retarded individual.

5. Judge Jaffee further ordered that Frederick F. remain at Mayview State Hospital, pending development of residential placement, for a period not to exceed 180 days. The record indicates that Frederick F.

Following the filing of this appeal by MH/MR a petition to stay the January 19, 1990 order pending appeal was filed by MH/MR and subsequently denied by Judge Jaffee. We affirmed the order denying the stay petition. On May 23, 1990, MH/MR filed a petition for a stay with the Pennsylvania Supreme Court. To date, our supreme court has not disposed of this petition. MH/MR presents two issues on appeal: [6]

> 1) Whether the juvenile court erred in finding that the petitioner, MH/MR, did not meet the standard for involuntary civil commitment, as set forth in the Mental Health and Mental Retardation Act, 50 P.S. § 4406?

> 2) Whether the juvenile court exceeded its authority in ordering MH/MR to provide rehabilitation services for Frederick F., an adjudicated dependent juvenile, pursuant to section 6357 of the juvenile act? [7]

With regard to MH/MR's first issue, the juvenile court found as a matter of fact that MH/MR had not met its burden of proving that the standard for involuntary commitment, pursuant to 50 P.S. § 4406, was met. Our scope

subsequently voluntarily committed himself to Mayview. Frederick F. was later discharged from Mayview and presently lives in a shelter facility operated pursuant to a contract with Allegheny County Children & Youth Services ("CYS").

**6.** We note that MH/MR's brief does not comply with Pa.R.A.P 2116(a) or Pa.R.A.P. 2119(a). Rule 2116(a) requires each point to be set forth in the statement of questions involved. Furthermore, rule 2116(a) states that "[w]henever possible each question must be followed immediately by an answer stating simply whether it was affirmed, negatived, qualified or not answered by the court ... below." Pa.R.A.P. 2116(a). MH/MR's brief does not set forth each point of argument, nor does it state the action taken with regard to each question by the trial court. Rule 2119(a) states that "[t]he argument shall be divided into as many parts as there are questions to be argued ..." Pa.R.A.P. 2119(a). Instantly, MH/MR has presented one question and four arguments. We call MH/MR's attention to the mandatory language of the Pennsylvania Rules of Appellate Procedure and note that future non-compliance may result in dismissal. *See* Pa.R.A.P. 2101.

**7.** We will not address MH/MR's argument with regard to the propriety of the juvenile court's placement of Frederick F. at Mayview State Hospital as that issue is now moot. Moreover, we will not discuss MH/MR's contention that the Juvenile Court failed to join the Commonwealth, as an indispensable party, to the commitment proceedings. This issue was not raised in the trial court and is, therefore, waived. *See* Pa.R.A.P. 302.

of review, therefore, is limited to determining whether the record adequately supports the finding of the trial court. *Levy v. First Pennsylvania Bank N.A.*, 338 Pa.Super. 73, 487 A.2d 857 (1985). The three criteria which must be met in determining whether a mentally retarded person should be involuntarily committed to the Commonwealth are:

(1) The person is impaired in adaptive behavior to a significant degree and is functioning at an intellectual level two standard deviation measurements below the norm as determined by acceptable psychological testing techniques.

(2) The impairment and the resultant disability were manifested before the person's 18th birthday and are likely to continue for an indefinite period.

(3) The person, because of his retardation, presents a substantial risk of physical injury to himself or physical debilitation as demonstrated by behavior within 30 days of the petition which shows that he is unable to provide for, and is not providing for his most basic need for nourishment, personal and medical care, shelter, self-protection and safety and that provision for such needs is not available and cannot be developed or provided in his own home or in his own community without residential placement.

55 Pa.Code § 6250.11. The only point of disagreement between the parties at the hearings was the final clause of criterion (3) referring to the availability and development of a program fulfilling Frederick F.'s needs in the community. Based upon expert testimony, largely from MH/MR's own professionals, the juvenile court found that Frederick F.'s needs would best be served by "a residential setting that has a mental retardation component to it." There was complete agreement among the expert witnesses that the community was the preferred site for Frederick F.'s residential treatment. We note that there was also a consensus of opinion that institutionalization would, in fact, be deleterious to Frederick F.'s mental health. Furthermore, the witnesses generally agreed that Frederick F.'s placement in

a state institution was considered inappropriate because such centers are more restrictive than Frederick F.'s needs dictate and placement in a state center would isolate Frederick F. from his family, who continue to maintain a relationship with him.

Nevertheless, MH/MR maintains that it demonstrated that a "406" involuntary commitment was appropriate for Frederick F. First, MH/MR argues that the Commonwealth, not the County, is responsible for long-term residential care of retarded individuals. The true crux of this argument is that MH/MR claims that it has no funds to pay for Frederick F.'s community placement, even though community placement is the preferred treatment method for Frederick F. In its second argument with regard to the "406" commitment criteria, MH/MR contends that a "406" commitment does not necessarily mean that Frederick F. would be institutionalized in a state center, therefore, a "406" commitment is not contrary to Frederick F.'s best interests. We address MH/MR's arguments *seriatim.*

■ With regard to MH/MR's first argument, it is undeniable that the state bears the responsibility for providing long-term residential care for mentally retarded citizens of the Commonwealth *whose needs cannot be met in any other way. See In Re Schmidt,* 494 Pa. 86, 98, 429 A.2d 631, 637 (1981) ("In this [Schmidt's] case the need for institutionalization can neither be prevented or minimized. There is no less restrictive alternative available for the county to provide. The concept of normalization is not a consideration in the placement of Joseph [Schmidt]"). In this case, however, the expert witnesses agree that Frederick F. does not need institutionalization and that institutionalization is, in fact, contrary to Frederick F.'s best interests. In *Schmidt,* our supreme court further held that the concept of normalization requires that "the least restriction consistent with adequate treatment and required care shall be employed." *Id.,* 494 Pa. at 96, 429 A.2d at 636. In the case at hand, the evidence before the juvenile court, including virtually all the testimony at the two hearings, com-

pletely supports Judge Jaffee's finding that "a state center ... was far more restrictive than Fred's [Frederick F.'s] needs dictate." Juvenile Court Opinion at 2.

MH/MR contends that the state must bear the financial responsibility for Frederick F.'s residential placement and that, therefore, a "406" commitment is appropriate. In support of this position, it relies upon *In Re Sauers*, 68 Pa.Cmwlth.Ct. 83, 447 A.2d 1132 (1982) (*en banc*), aff'd per curiam, 500 Pa. 342, 456 A.2d 987 (1983). *Sauers* directly addressed the issue, undecided in *Schmidt*, of which government entity bears the financial burden for the placement of a mentally retarded person. In *Sauers*, the Commonwealth Court found that the county was responsible for community residential placement for Sauers, a mentally retarded adult, but the funds for such placement were to be allocated by the Commonwealth *to the county mental health/mental retardation program* which was to develop an appropriate residential program. *Id.*, 68 Pa.Cmwlth.Ct. at 90, 447 A.2d at 1135–36. *Sauers* does not, therefore, stand for the proposition that the Commonwealth should provide placement for a mentally retarded individual merely because it provides the funds for such placement. Instantly, Judge Jaffee noted, "... although the county is charged with the responsibility for developing a non-institutional placement for Fred [Frederick F.], the Commonwealth pays the cost; ... [a]s a practical matter, all of the MH/MR funds are administered through the County, regardless of their original source." Juvenile Court Opinion at 5. Furthermore, *Sauers* is distinguishable from the instant case in that the court was not faced with the issue of the appropriateness of an institutional commitment *rather than* community placement. The *Sauers* court decision spoke only in terms of community residential placement. We note further that neither *Sauers* nor *Schmidt* dealt with the problem of an adjudicated dependent juvenile, a minor whose health and welfare are legally the responsibility of Allegheny County, not the Commonwealth.

■ MH/MR contends that the only way Frederick F. can receive appropriate treatment for his mental retardation is through a "406" commitment because it, an Allegheny County agency, does not have the funds necessary to develop a residential program for this child. There are conflicting statements in the record regarding the actual availability of such funds. It appears that the ongoing funding feud between the County and the Commonwealth underlies MH/MR's actions in this case. Nonetheless, the availability, or unavailability, of funding does not release the County from its obligations and duties as Frederick F.'s guardian. *See City of Philadelphia v. Commonwealth,* 128 Pa. Cmwlth.Ct. 565, 564 A.2d 271 (1989); *In Re Sauers, supra.* Judge Jaffee properly found that county agency funding was not part of a "406" commitment consideration.

MH/MR next argues that a "406" commitment does not necessarily mean that Frederick F. will be institutionalized in a state center. MH/MR provides no support for this contention other than its reference to the language of section 4406 and its enabling regulations. While 55 Pa. Code § 6250.11(3) does not refer specifically to institutionalization per se, we note that one of MH/MR's own witnesses, Ruth Ann Koss, testified that "[a] residential facility is not available as of this hearing, so in lieu of a residential setting, a state center would be the only available placement for him [Frederick F.]." Clearly, the language of the law notwithstanding, Judge Jaffee correctly found that a "406" commitment would result in Frederick F.'s placement in a state institution.

In summary we find that the record is replete with evidence supporting the juvenile court's factual finding that MH/MR did not meet its burden of proof for a "406" commitment for Frederick F. MH/MR did not provide sufficient evidence that provision for Frederick F.'s needs "is not available and cannot be developed or provided in his own home *or community without residential placement.*" 55 Pa.Code § 6250.11(3) (emphasis added).

We next address the second issue presented in this action. MH/MR contends that the juvenile court lacked the authority to order MH/MR (or CYS) to provide rehabilitation services under the Juvenile Act.

In support of its contention that the juvenile court could not order the County agencies to provide the services which Frederick F. requires, MH/MR presents three arguments. MH/MR first claims that due to Frederick F.'s mental retardation the juvenile court had to proceed under the MH/MR Act, rather than the Juvenile Act. Next, MH/MR argues that Frederick F.'s dependency status is secondary to his needs as a mentally retarded person and that, therefore, the MH/MR Act is the appropriate vehicle in determining his disposition. Last, MH/MR contends that the juvenile court had to conduct a dispositional hearing pursuant to section 6351 of the Juvenile Act before it could order the county agencies to provide suitable residential placement for Frederick F. in the community. We address these arguments *seriatim*.

■ MH/MR first asserts that "where the problem being addressed is mental retardation, the MH/MR Act of 1966 takes precedence and the Court below did not have an option to use the Juvenile Act." In support of this assertion MH/MR relies upon section 6356 of the Juvenile Act, which states:

> If, at a dispositional hearing of a child found to be a delinquent or at any hearing, the evidence indicates that the child may be subject to commitment or detention under the provisions of the act ... known as the "Mental Health and Retardation Act of 1966," or the act ... known as the "Mental Health Procedures Act" the court shall proceed under the provisions of the appropriate statute.

42 Pa.C.S. § 6356. We do not interpret section 6356 to mean that the MH/MR Act takes precedence over the Juvenile Act. Frederick F. is no less a dependent juvenile because he is mentally retarded or mentally ill. Having found that Frederick F. was *not* subject to commitment

under section 4406 of the MH/MR Act, there was no reason for the juvenile court to proceed under the MH/MR Act. Section 6351 of the Juvenile Act empowers the juvenile court to make any disposition "best suited to the protection and physical, mental, and moral welfare of the child." 42 Pa.C.S. § 6351(a). We note that the courts of this Commonwealth have consistently found that a court acting pursuant to the Juvenile Act has broad discretionary powers "guided by the overriding principle of acting to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions [of the Juvenile Act]." *In re Lowry,* 506 Pa. 121, 129–130, 484 A.2d 383, 388 (1984); 42 Pa.C.S. 6301(b). *See also Janet D. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060 (1976) (the juvenile court and the child's custodian share the responsibility of developing and carrying out a plan of treatment which is appropriate to the individualized needs of each child).

Most recently, in *In Re Tameka M.,* 368 Pa.Super. 525, 534 A.2d 782 (1987), *aff'd.,* 525 Pa. 348, 580 A.2d 750 (1990), this court upheld an order of the juvenile court which directed CYS to reimburse the foster parents of an emotionally disturbed dependent juvenile for the child's attendance at a Montessori pre-school. The child's behavior had markedly deteriorated in a state pre-school program but dramatically improved in the private Montessori program. CYS argued that the court overstepped the bounds of its authority in ordering CYS to reimburse the foster parents for the dependent child's special schooling when CYS could not, in turn, be reimbursed by the Commonwealth. We held:

> ... it is essential that the juvenile court exercise its authority over the dependent child ... so that the child's best interests are met despite changes in the child's condition or environment. The juvenile court's jurisdiction over a dependent child does not end with the entry of an order of disposition ... [b]y finding that the court has the authority to enter the present order, we advance one

of the purposes of the [Juvenile] Act, which is to provide for the wholesome mental development of the child.

*Tameka M.*, 368 Pa.Superior Ct. at 541, 534 A.2d at 790.

In *Lowry*, our supreme court held that a juvenile court has the authority to order the county to fund placements which were not approved by the Commonwealth, but which were clearly in the child's best interests. In *Tameka M.*, we specifically determined that *Lowry* applied with equal force to the circumstances in *Tameka M.* Recently, our supreme court affirmed our application of *Lowry* to the facts of *Tameka M. See In re Tameka M.*, 525 Pa. at ——, 580 A.2d at 753. We see no reason why the rationale underlying *Lowry* and *Tameka M.* should not apply to the juvenile court's order with regard to community placement for Frederick F. The juvenile court's jurisdiction and its authority over Frederick F. are limited only by his needs and interests. *Lowry, supra; Tameka M., supra.*

 MH/MR's second argument, that the juvenile court must proceed under the MH/MR Act rather than the Juvenile Act because Frederick F.'s dependency status is secondary to his needs as a mentally retarded person, fails for the very reasons enunciated above. Judge Jaffee found that Frederick F.'s dependency "... if not entirely a result of his mental illness and mental retardation, is inextricably bound up with it." Juvenile Court Opinion at 7. There is ample evidence in the record to support this finding of fact. The juvenile court must consider the needs of the child as a whole; Frederick F.'s mental health and retardation may not be severed from his status as a dependent juvenile for whom the legal custodian, Allegheny County, has "the right and duty to provide for the care, protection, training, and education, and the physical, mental, and moral welfare of the child subject to the conditions and limitations of the order [of the court] ..." 42 Pa.C.S. § 6357. We reiterate that under the Juvenile Act, the court has broad discretionary powers to make a disposition limited only by the caveat that the disposition be "best suited to the protection and physical, mental, and moral welfare of the child" *Lowry,*

506 Pa. at 124, 484 A.2d at 385 (*citing* 42 Pa.C.S. § 6351(a)(1)).

In its final argument in support of its contention that the juvenile court lacked the authority to order MH/MR to provide for Frederick F.'s needs in the community, MH/MR contends that the court could not order a disposition under the Juvenile Act without a dispositional hearing, pursuant to 42 Pa.C.S. § 6351. To support this argument, MH/MR places great reliance on the fact that the juvenile court's disposition in *Tameka M.*, which we affirmed, was made at a dispositional review hearing pursuant to the Juvenile Act, not, as here, at a "406" commitment hearing pursuant to the MH/MR Act. Our independent reading of section 6351(b) does not persuade us of the validity of MH/MR's argument. Section 6351(b) of the Juvenile Act states:

> (b) Required preplacement findings.—Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows ...

42 Pa.C.S. § 6351(b). The plain meaning of this provision is that the court must make certain findings before *removing a dependent child from his home.* We further note that as dispositional review hearings are mandated by the Juvenile Act at regular intervals, Frederick F.'s placement will be subject to periodic review, and the disposition made by the juvenile court can be adapted as the child's needs change. *See* 42 Pa.C.S. § 6351(e). We are not, therefore, convinced that a formal dispositional hearing had to be conducted by the juvenile court before it could enter the order which is presently at issue. In addressing this issue in *Tameka M.*, our supreme court held:

> The Juvenile Court maintains a continuing plenary jurisdiction in dependency cases under 42 P.S. § 6351 ... and has the power to review the circumstances of dependent juveniles ... concerning the condition and needs of the dependent child.

*Tameka M.*, 525 Pa. at ——, 580 A.2d at 752. Frederick F. was adjudicated a dependent and removed from his home six years ago. He has been placed in and removed from numerous foster homes and agency placements since that time. The juvenile court, under sections 6351 and 6357 of the Juvenile Act, had the duty as well as the authority to make an appropriate placement for Frederick F. once it determined that a "406" commitment was inappropriate.

In conclusion, we determine that the juvenile court was within its authority in ordering MH/MR to provide appropriate community residential placement for Frederick F. We agree with the juvenile court that Allegheny County cannot foist its responsibility for Frederick F. upon the Commonwealth if the petitioner, MH/MR, is unable to meet required criteria for a "406" commitment for Frederick F. As we have already determined that there was sufficient competent evidence to support Judge Jaffee's finding that the "406" criteria were not met, we affirm the juvenile court's order in all respects.

Order affirmed.