**David W. FRITZ, an incompetent, by his mother and guardian, Helen FRITZ, et al.**

v.

**John WHITE, Secretary, Department of Public Welfare, Commonwealth of Pennsylvania, et al.**

**Civ. A. No. 88–5789.**

United States District Court, E.D. Pennsylvania.

April 28, 1989.

Edmond A. Tiryak, Philadelphia, Pa., for plaintiff.

Denise A. Kuhn, Deputy Atty. Gen., Philadelphia, Pa., for Secretary White.

Robert O. Baldi, New Hope, Pa., for Bucks County & Philip Fenster.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The original plaintiffs herein—five profoundly retarded individuals residing and receiving habilitation at Pleasant Manor, a private licensed facility in Bucks County, Pennsylvania—commenced this action to obtain injunctive relief requiring the Commonwealth of Pennsylvania and Bucks County to provide the additional funding required to avoid their eviction from Pleasant Manor. On the day this Court was to conduct a hearing on the plaintiffs' motion for a preliminary injunction, a settlement was reached which provided plaintiffs with the relief they sought. Plaintiffs subsequently filed a motion seeking an award of $20,475.00 in attorney's fees, together with costs of $1,200.00. Defendant John White, Jr., Secretary of the Commonwealth of Pennsylvania Department of Public Welfare ("Commonwealth defendant") responded by contending that as to the Commonwealth there was no causal connection between this litigation and the relief obtained by the settlement. Defendants Bucks County and Philip Fenster, Administrator of the Bucks County Office of Mental Retardation ("County defendants"), filed a reply in which they contend that the plaintiffs are entitled to recover attorneys' fees from the Commonwealth defendant, but that the County defendants should not be obligated to pay a fee. The Court held a hearing on February 22, 1989, at which all the parties presented evidence "for the purpose of determining the causal connection between the relief obtained and the litigation."

### I.

The costs of the plaintiffs' residential treatment at Pleasant Manor are paid by the County defendants with funds allocated by the Commonwealth defendant. Pleasant Manor announced a raise of its per diem rate by 38%. The County defendants and the Commonwealth defendant responded that funds were not available to pay such an increase.

The plaintiffs filed a complaint on July 26, 1988 to obtain declaratory and injunctive relief, alleging as the basis therefor that the defendants' failure to provide adequate funding would result in the plaintiffs' eviction from Pleasant Manor and requested an injunction to compel the Commonwealth defendants to provide sufficient funding to the County defendants to pay the full costs of plaintiffs' continued habilitation at Pleasant Manor.

The administrator of Pleasant Manor issued a notice dated September 14, 1988 in which she informed the parents of the plaintiffs that their children would be "discharged" from Pleasant Manor within 60 days. On September 22, 1988, plaintiffs moved for a temporary restraining order or a preliminary injunction to obtain the needed funding. On October 14th, this Court denied plaintiffs' request for a TRO but scheduled a hearing for November 3rd in connection with plaintiffs' motion for a preliminary injunction. On October 26th, the County defendants moved to join as plaintiffs seven other retarded residents of

Bucks County who were receiving habilitative services at Pleasant Manor and who had also been threatened with being evicted from Pleasant Manor. The Court issued an order joining the seven other Bucks County residents at Pleasant Manor and directing the County defendants to represent them. The County defendants joined in plaintiffs' request for injunctive relief.

On the day of the scheduled hearing on the request by plaintiffs and the County defendants for injunctive relief against the Commonwealth defendant, November 3, 1988, the parties announced to the Court that a settlement had been reached whereby the Commonwealth defendant would provide additional funding to the County defendants and the County defendants would pay Pleasant Manor an increase of 26%, an amount previously agreed to by Pleasant Manor. Pursuant to Local Rule of Civil Procedure 23(b), the Court ordered this litigation dismissed with prejudice. Subsequently, as provided by the settlement, the Commonwealth defendants forwarded additional funds which funds were used by the County defendants to pay the increased charges to Pleasant Manor, permitting all of the retarded plaintiffs to continue receiving habilitative services at Pleasant Manor.

In their motion for attorneys' fees, the plaintiffs contend that a causal connection exists between this litigation and the relief obtained by the plaintiffs. The plaintiffs seek to recover attorney's fees and costs only from the Commonwealth defendant and not from the County defendants. The Commonwealth defendant contends that relief was obtained by the plaintiffs because the Governor signed a supplemental appropriation ("Act 55A"), making additional funds available for the County defendants, and the County defendants agreed by settlement to use a portion of the funds to pay the increased costs for the retarded plaintiffs at Pleasant Manor. The Commonwealth defendant claims neither the Commonwealth nor any of its employees took any action in response to this litigation. It is the Commonwealth defendant's position that he merely acted in a ministerial capacity by allocating additional funds to each County. As heretofore pointed out, the County defendants, against whom the plaintiffs seek no recovery of attorney's fees and costs, do not contest plaintiffs' entitlement to recover against the Commonwealth defendant.

At the February 22, 1989 hearing scheduled for the purpose of obtaining evidence from the parties to determine the causal connection between the relief obtained and the litigation, the Court heard from several witnesses and received documentary evidence. After carefully considering that evidence, together with the affidavits submitted by the parties, the Court concludes that there was a causal connection between this lawsuit and the relief obtained by the plaintiffs. In accordance with 42 U.S.C. § 1988, the plaintiffs are therefore entitled to a reasonable attorney's fee and costs.

II.

Following the decision by Pleasant Manor to increase its rate by 38%, the County defendants in a letter dated June 27, 1988, notified the parents of the retarded plaintiffs that the County will offer Pleasant Manor a 2.68% increase but if the offer is refused, the parents will be required to choose between paying the increased charges themselves, taking their children home or having the County initiate commitments to the Embreeville State Center.

The parents of the plaintiffs were not satisfied with any of the options provided by the County. Helen Fritz, the mother of plaintiff David Fritz, acted on behalf of all the parents and contacted county and state officials and members of the state legislature in an effort to amicably resolve the problem. The parents met with defendant Phillip Fenster, Administrator of the Bucks County Department of Mental Health–Mental Retardation. He told Mrs. Fritz that the County lacked the funds needed to help the parents keep their children at Pleasant Manor without additional funding from the Commonwealth. Two of the Bucks County Commissioners met with all the families. They promised to help but said there was nothing they could do without additional

state funding. The parents also wrote to members of the Legislature. The Executive Director of the State House Health and Welfare Committee, Mary Ellen McMillen, promised that the Bucks County legislators would meet and consider the problem.

In a memorandum dated July 14, 1988, Mrs. McMillen stated, "I have spoken with the deputy secretary, Mr. Eidelman, who advises me that a meeting has been scheduled for July 21, 1988, to attempt to resolve the Pleasant Manor crisis. His regional staff will meet with the administrators from Bucks, Chester, Delaware, Montgomery and Philadelphia Counties and Pleasant Manor to negotiate an acceptable rate." After receiving a copy of this memorandum, Mrs. Fritz twice attempted to reach Deputy Secretary Eidelman by telephone. She was told that Deputy Secretary Eidelman was unavailable and that she should contact the regional D.P.W. administrator. Mrs. Fritz then made repeated unsuccessful attempts to reach the regional administrator but no one returned her calls. Finally, Mrs. Fritz was advised that the parents of the retarded plaintiffs would not be permitted to attend the meeting between D.P.W. regional staff, Pleasant Manor, and representatives of the five southeastern Pennsylvania counties. The meeting took place in late July, but the rate increase being demanded by Pleasant Manor was not settled. Faced with the fear that their retarded loved ones would be evicted from Pleasant Manor, the plaintiffs retained counsel who filed this complaint on July 26, 1988.

On August 3, 1988, Mrs. Fritz wrote to the Governor and received a reply from Deputy Secretary Eidelman on August 29th which advised that Pleasant Manor had agreed to accept a 26% increase rather than the 38% initially requested. This compromise at 26% was the result of negotiations between the representatives of Pleasant Manor, representatives of the Commonwealth defendant, and representatives of the counties.

Mrs. Fritz and other relatives of the plaintiffs continued to meet with county and state officials in an effort to find a solution. No one informed the parents that additional state funds might be made available. On September 14th, Pleasant Manor issued its 60 day notice to the parents of its intent to evict the retarded plaintiffs unless the increased costs were paid. On September 20, 1988, the Executive Director of the State House Health and Welfare Committee again wrote to the Bucks County legislators advising them that the second quarter allocation letters would be sent out that week by D.P.W. providing more funding to the counties. The memorandum stated, however, "the funding increase will not be sufficient to meet the needs of Pleasant Manor residents." In the meantime, state officials had informed the County defendants that, contrary to Mr. Fenster's June 27th letter to the parents, there were no beds available in any state facility to provide appropriate habilitation for the plaintiffs in the event they were evicted from Pleasant Manor. Under these circumstances, the parents had no choice but to proceed with this litigation and on September 22nd, plaintiffs moved for a temporary restraining order or a preliminary injunction. On October 14th, the Court scheduled a hearing for November 3rd on the request for a preliminary injunction.

The Department of Public Welfare was well aware of this lawsuit. In October, Deputy Secretary Eidelman discussed the lawsuit with Joseph Gaultier, Director of the Bureau of Program Support for D.P.W. and inquired as to whether additional funds would be forthcoming for Bucks County as a result of Act 55A. Deputy Secretary Eidelman did not inquire as to what additional funds would be provided to any other county. He told Mr. Gaultier that $70,000.00 was needed by the county to keep its residents in Pleasant Manor. Prior to the signing of Act 55A, Mr. Gaultier was aware of the effort to obtain supplemental funding from the legislature.

Act 55A was signed by the Governor on October 14th, making available more than six million dollars in supplemental funds for mental retardation services statewide. Late in October, Deputy Secretary Eidelman orally assured the County defendants that they would receive the extra funds

needed to pay the Pleasant Manor rate increases. The plaintiffs, however, were never given this assurance. Indeed, on October 27th, the Commonwealth defendant advised the plaintiffs that settlement was not possible. However, one day prior to the hearing on the preliminary injunction, which this Court had scheduled for November 3, 1988, the plaintiffs were advised for the first time that additional funding was forthcoming from the Commonwealth defendant and that the County defendants agreed to use these funds to pay the rate increase at Pleasant Manor. As heretofore pointed out, the settlement was presented the following morning to the Court.

### III.

■ The threshold inquiry for the Court when presented with an application for attorney's fees in a civil rights action is whether the claimant qualifies as a "prevailing party." The Third Circuit has stated in discussing fee awards under 42 U.S. C. § 1988 that the Court must look to the substance of the litigation's outcome to determine the "prevailing party." *Ross v. Horn*, 598 F.2d 1312, 1322 (3d Cir.1979), *cert. denied*, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). A claimant may be a "prevailing party" although the litigation ended in settlement. *See Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 2574, 65 L.Ed. 2d 653 (1980); *accord, Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 2675, 96 L.Ed. 2d 654 (1987).

■ The test for "prevailing party" status entails a two-fold inquiry. The first part of the test "is whether plaintiff achieved some of the benefit sought by the party bringing the suit." *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 910 (3d Cir.1985) (quoting *NAACP v. Wilmington Medical Center, Inc.*, 689 F.2d 1161, 1167 (3d Cir.1982, *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983)). The second part of this test is whether the "litigation 'constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief.'" *Insti-*

*tutionalized Juveniles*, 758 F.2d at 916 (quoting *Sullivan v. Commonwealth of Pa. Dep't of Labor & Indus.*, 663 F.2d 443, 452 (3d Cir.1981), *cert. denied*, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982)).

The parties to this lawsuit agree that the plaintiffs achieved all of the relief sought, namely, the prevention of their eviction and the continued funding of their habilitation at Pleasant Manor. The first part of the prevailing party test has therefore been met. The Commonwealth defendant claims that there is no causal connection between this litigation and the relief obtained by the settlement.

The plaintiffs' lawsuit need not be the sole cause of the defendants' action. *See Morrison v. Ayoob*, 627 F.2d 669, 671 (3d Cir.1980) (per curiam), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981). In addition, as stated by the Third Circuit in *Wilmington Medical Center*, 689 F.2d at 1169, the district court must "apply the most expansive definition of causation." This Court must determine whether the plaintiffs' lawsuit is causally linked to the relief obtained.

The Court has carefully reviewed all the evidence submitted on the issue of causation. The timing and content of the settlement is significant. Although the defendants had expressed sympathy for the plight of the retarded plaintiffs, the parents were always advised that nothing could be done for their retarded loved ones because funds were not available. The County defendants took the position that it was the Commonwealth's duty to provide the funding. The Commonwealth defendant took the position that no additional funding was available. At no time were the plaintiffs advised of the possibility that the Commonwealth defendant might procure additional funding which would resolve the crisis.

The Commonwealth defendant made his first move towards settlement on the day prior to the hearing on plaintiffs' motion for a preliminary injunction. The injunction sought by the plaintiffs, if granted by the Court, would have compelled the Commonwealth defendant to obtain the funds

needed by the County defendants to pay Pleasant Manor. The settlement agreement submitted to the Court on the day of the hearing provided for the Commonwealth defendant to provide additional funds to the County defendants and the County defendants agreed to pay the Pleasant Manor rate increase. On the basis of evidence presented to this Court in this litigation and the terms of the settlement agreement between the plaintiffs and the defendants, this Court finds that a causal connection exists between this litigation and the relief obtained by the settlement. The litigation was a material factor in bringing about the relief obtained by the plaintiffs.

The Commonwealth defendant contends that the relief obtained by the plaintiffs resulted from the happenstance that the Governor signed Act 55A and that the Commonwealth defendant had nothing whatsoever to do with it. As the Commonwealth defendant states in the brief, "[t]he relief plaintiffs sought was not obtained from Secretary White as a result of this litigation. Again, it was obtained via the Governor's appropriation of supplemental funding ..." Commonwealth Defendant's Reply Brief to Plaintiffs' Motion for Attorney's Fees, at 10. This position is so extraordinary and improbable that it is unworthy of belief. This Court is well aware, and I am sure that the Secretary of Public Welfare is well aware, that Section 201 of the Mental Health and Mental Retardation Act of 1966 ("MH/MR Act") specifically states that the Department of Public Welfare "shall have the power, and its duty shall be: (1) To assure within the State the availability ... of adequate mental retardation services for all persons who need them ..." 50 P.S. § 4201(1). As Secretary of D.P.W., the Commonwealth defendant was mandated to act and did act to fulfill his obligation to the plaintiffs in settling this case.

In concluding that the plaintiffs are entitled to an award of reasonable attorney's fees and costs the Court has considered Justice Powell's observation in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

In enacting § 1988, Congress rejected the traditional assumption that private choices whether to litigate, compromise, or forego a potential claim will yield a socially desirable level of enforcement as far as the enumerated civil rights statutes are concerned.

All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must recover what it costs them to vindicate these rights in court.

*Id.*, 103 S.Ct. at 1945. (citations omitted). The retarded plaintiffs in this case were required to retain private counsel and since this Court has found that they are "prevailing parties" they are entitled to reasonable counsel fees and costs.

### IV.

■ The initial estimate of a reasonable attorney's fee, commonly referred to as the lodestar, is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984). The trial court, therefore, is required to "exclude from this initial fee calculation hours that were not reasonably expended in the litigation." *Hensley v. Eckerhart*, 103 S.Ct. at 1939–40.

■ Counsel has requested payment for his fees at the rate of $195 per hour. Plaintiffs' counsel has filed an affidavit that his usual billing rate is $195 per hour for this type of litigation. Counsel also states that he has billed and collected from plaintiffs' families at the rate of $195 per

hour in this case. As there are no special circumstances in this case calling for the Court to set a different rate, *See Student Public Interest Research Group v. AT & T Bell Lab.*, 842 F.2d 1436, 1445 (3d Cir. 1988), the Court finds that the actual billing rate of $195 per hour is reasonable for this litigation.

■■■ Counsel seeks payment for 105 hours of work. Included in this total of 105 hours is the time expended in preparing the petitions for attorney's fees, the time expended in preparation for the hearing as to whether plaintiffs were "prevailing parties", and the time consumed at the hearing. It is clear that counsel is entitled to recover for this service and that the 24.25 hours expended were reasonable. *See Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d at 924. The Court must disallow any hours not "reasonably expended" by excluding hours that are "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart*, 103 S.Ct. at 1939–40. Plaintiffs bear the burden of persuasion to establish that the hours expended were reasonably necessary to perform the specified tasks. *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir.1978).

■■■ Plaintiffs' fee petition seeks reimbursement for 18 hours of time to research and draft the complaint. Another 34.75 hours were billed for the research and drafting of the memorandum and supplemental memorandum filed in support of plaintiffs' motion for a temporary restraining order or preliminary injunction. The Court finds these hours to be unreasonable in light of the extensive experience of counsel in litigating similar matters in connection with the rights of the mentally retarded. The Court will therefore reduce the total hours allowed for these tasks from 52.75 to 30, a figure which is more in line with the efficiency expected of an attorney billing at counsel's rate of $195 per hour. The Court finds, therefore, that the total number of hours reasonably expended for which plaintiff's counsel is entitled to recover is 82.25 hours.

Plaintiffs also have billed to recover costs of $1,200. The cost figure includes $1,080 paid to a psychologist who traveled to Pleasant Manor and evaluated the retarded plaintiffs and reviewed their records. The psychologist met with the families of the plaintiffs to gather further information and prepared five expert reports. This expert also spent time with plaintiffs' counsel in preparing for her testimony at the hearing on the request for injunctive relief. For these services, the plaintiffs were billed $1,080 by the psychologist.

■■■ Although expert witness fees are generally limited to the statutory amounts set by 28 U.S.C. §§ 1821 and 1920, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), these statutes are not considered applicable to a request for expenses of an expert witness filed pursuant to 42 U.S.C. § 1988. *Id.*, 107 S.Ct. at 2499 (Blackmun, J., concurring); *Id.*, 107 S.Ct. at 2500, n. 1. (Marshall, J., dissenting); *Sapanajin v. Gunter*, 857 F.2d 463 (8th Cir.1988); *Black Grievance Committee v. Philadelphia Elec. Co.*, 690 F.Supp. 1393, 1403 (E.D.Pa. 1988). The reasonable fees of an expert witness, if reasonably incurred, should be recoverable in this litigation. The Court, however, has been presented with no basis upon which it can evaluate the reasonableness of the $1,080 fee of the expert. This cost will, therefore, be denied without prejudice to the plaintiffs' filing with the Court an affidavit as to the number of hours reasonably expended and the reasonable hourly rate of the expert, together with copies of the reports prepared by the expert.

Plaintiffs' counsel is therefore entitled to an award based upon an hourly rate of $195 for 82.25 hours of work, plus costs of $120, for a total of $16,158.75.

## V.

■■■ Having determined the total fee award which the plaintiffs are entitled to collect, the Court must determine whether and to what extent the fees and costs should be shared between the Commonwealth defendant and the County defen-

dants. *Durett v. Cohen,* 790 F.2d 360, 364 (3d Cir.1986).

As has been pointed out by Courts on many occasions, the Commonwealth and Counties are jointly responsible for providing habilitation to the retarded. Each has been mandated by the Legislature to provide habilitation to the mentally retarded residents of Bucks County by the MH/MR Act. As Judge (now Chief Judge) Gibbons stated in *Halderman v. Pennhurst State School & Hospital,* 612 F.2d 84, 102 (3d Cir.1979) (en banc), *rev'd on other grounds,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), "[t]he MH/MR Act of 1966 contemplated a joint venture between the Commonwealth and its subdivisions, the counties, in the provision of services to the mentally handicapped." The Supreme Court of Pennsylvania has also made it abundantly clear, in an opinion written by Justice (now Chief Justice) Nix, that the MH/MR Act places an affirmative duty on both the state and the county together "to insure the availability of adequate mental retardation services for all of the residents of the state in need of such services." *In re Schmidt,* 494 Pa. 86, 429 A.2d 631, 635 (1981). Section 201 of the MH/MR Act specifically mandates that the Department of Public Welfare "assure within the State the availability ... of adequate ... mental retardation services for all persons who need them ..." 50 P.S. § 4201(1). The Commonwealth defendant was therefore obligated to allocate sufficient funding for mental retardation services required by the retarded plaintiffs. The MH/MR Act also mandates that the Department of Public Welfare "consult with and assist each County in carrying out ... mental retardation duties and functions," 50 P.S. § 4201(3), and requires the Department "[t]o make grants, pay subsidies, purchase services and provide reimbursement for ... mental retardation services," 50 P.S. § 4201(7). The MH/MR Act makes it clear that it is the obligation of the Department to "supervise ... mental retardation facilities, services and programs." 50 P.S. § 4201(8). The Pennsylvania Supreme Court has held that the Department of Public Welfare is required to allocate funds

to county mental retardation programs for placement of mentally retarded persons in community based residences. *In re Sauers,* 68 Pa.Commw. 83, 447 A.2d 1132 (1982) (en banc), *aff'd,* 500 Pa. 342, 456 A.2d 987 (1983).

Since the Commonwealth defendant and the County defendants had a joint responsibility to provide habilitation to the retarded plaintiffs, it could be contended that they should be made jointly liable to the plaintiffs for fees and costs. However, because of the unusual circumstances presented in this litigation, the Court has determined that the award for all fees and costs will be made against the Commonwealth and that no award of fees and costs will be imposed upon the County. The Court may take into account equitable considerations based on the facts. *Durett v. Cohen,* 790 F.2d at 363.

It is clear on the record that it would be inequitable under the circumstances of this case to put the County and the Commonwealth on equal footing as to their liability for the award of fees and costs. The County has played an unusual role in this case. In their answer, the County defendants cross-claimed against the Commonwealth, incorporating the allegations of the plaintiffs' complaint. When plaintiffs moved for a preliminary injunction, the County defendants joined the plaintiffs' request. The County defendants also filed a motion to join as plaintiffs seven other retarded residents of Bucks County who were receiving habilitation at Pleasant Manor. The County volunteered to represent the additional seven retarded plaintiffs in the event they would be unable to retain private counsel. The County defendants agreed that the plaintiffs should be permitted to stay at Pleasant Manor. It was the County defendant's position that the County could not pay the increase to Pleasant Manor without depriving other retarded residents of their habilitation services.

As heretofore pointed out, the Commonwealth's Department of Public Welfare took the position from the very beginning of this controversy that the Commonwealth could and would do nothing to prevent the

eviction of the retarded plaintiffs from Pleasant Manor. The Commonwealth contends that it was the County's obligation to provide habilitation services to the plaintiffs who resided at Pleasant Manor. During the entire period of this controversy, however, the Commonwealth insisted that pursuant to state regulations, since Pleasant Manor provided habilitation to other County and out-of-state residents, only the Commonwealth could negotiate the rate dispute with Pleasant Manor. The Court applauds the efforts of the Commonwealth to oppose the payment of unreasonably high rates. However, the procedure adopted by the Department of Public Welfare in this case cannot be applauded. The procedure of the Department in this case borders somewhat on bureaucratic terrorism in that after the parents were advised that their retarded children would be evicted from Pleasant Manor, the Department left the parents with no alternative for providing habilitation to their retarded children except to tell them that they could take their children home or pay the increased costs of habilitation out of their own pockets. This was done at a time when the officials of the Department were aware that a supplemental appropriation was expected from the Legislature and that any funds allocated by the Department to Bucks County could be used to pay any justifiable increase in the rates charged by Pleasant Manor. I find, as did Judge Katz in *Alessi v. Commonwealth of Pennsylvania,* 710 F.Supp. 127, 134 (E.D. Pa.1989), that the system utilized by the Commonwealth's Department of Public Welfare to allocate funds for the mentally retarded is "an irrational one" in that it appears to be the policy and practice of the Department to request from the Legislature less funding than will be reasonably necessary for the habilitation of the retarded, thereby creating crises similar to the one that fomented this litigation. As a result of the position taken by the Department, the plaintiffs were left with no alternative but to borrow funds to employ private counsel for the purpose of instituting this litigation and, as heretofore pointed out, on the day of the hearing, the Commonwealth defendant entered into an agreement with the County and the parents that additional funds would be forthcoming to pay the 26% increase negotiated by the Commonwealth with Pleasant Manor. Under these circumstances, the Court has concluded that the Commonwealth defendant should be solely liable for the award of attorney's fees and costs.

### ORDER

AND NOW, this 28th day of April, 1989, upon consideration of plaintiffs' motion for the award of attorney's fees and costs, for the reasons set forth in this Court's Memorandum of April 28th, 1989,

IT IS ORDERED: John White, Jr., Secretary of the Commonwealth of Pennsylvania Department of Public Welfare, shall pay plaintiffs' counsel, Edmund A. Tiryak, the amount of $16,038.75 in attorney's fees and $120 in costs for a total sum of $16,-158.75.

IT IS FURTHER ORDERED: Plaintiffs shall within ten (10) days of the date of this Order file with the Court an affidavit as to the number of hours reasonably expended and the reasonable hourly rate charged by their expert witness, together with copies of the reports she prepared for this litigation. Within twenty (20) days of the date of this Order, defendants shall file their replies thereto.