564 A.2d 271

**CITY OF PHILADELPHIA et al., Petitioners,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE et al., Respondents.**

Commonwealth Court of Pennsylvania.

Heard Sept. 6, 1989.

Decided Sept. 18, 1989.

Richard J. Gold, First Deputy City Sol., with him, Guy Vilim, Divisional Deputy City Sol., Doris M. Leisch, Deputy City Sol., Beth Kahn, Asst. City Sol., and Seymour Kurkland, for petitioners, City of Philadelphia, Mayor Goode, and Doctors Clifford and Glover.

David Ferleger, Philadelphia, for petitioners, Philadelphia Police and Fire Ass'n for Handicapped Children, Inc., individuals Coccia and Fialkowski, et al.

Gwendolyn T. Mosley, Deputy Atty. Gen., with her, Gregory R. Neuhauser, Sr. Deputy Atty. Gen., David Donaldson, Sr., Deputy Atty. Gen., and John G. Knorr, III, Chief Deputy Atty. Gen., Chief litigation Section, and Morey

Meyers, Office of Gen. Counsel, for respondents, Com. of Pennsylvania, Dept. of Public Welfare, Governor Casey, and Secretaries Hershock, White, Jr., and Eidelman and Director Orr.

Robert S. Spalding, Deputy Gen. Counsel, Philadelphia, with him, Bridget M. Whitley, Asst. Gen. Counsel, Harrisburg, Judith Karns Ciszek, Associate Gen. Counsel, Greensburg, and James M. White, Gen. Counsel, for respondent, Catherine Baker Knoll, Treasurer of the Com. of Pennsylvania, Harrisburg.

C. Clark Hodgson, Jr., with him, Jane Landes Foster, Stradley, Ronon, Stevens & Young, Philadelphia, for respondents, Singel and Manderino and The Pennsylvania Gen. Assembly.

## OPINION

CRUMLISH, Jr., President Judge.

The City of Philadelphia et al. (petitioners)[1] have filed a motion for preliminary injunction seeking to compel the Commonwealth of Pennsylvania et al. to provide funding to continue or reinstate adequate nonresidential services to mentally retarded persons.[2]

Petitioners include a class comprised of mentally retarded persons living in their own homes who are receiving or until

1. Petitioners include the Mayor of the City, the Commissioner of Public Health, the Administrator of the Office of Mental Health and Mental Retardation, a private, non-profit association devoted to protecting the rights of handicapped children; and two named mentally retarded individuals who purport to represent all others similarly situated.

2. A hearing was held on September 6, 1989, at which time the parties presented testimony and submitted stipulations of fact, affidavits, transcripts and exhibits. At that time, counsel for the Philadelphia Police and Fire Association for Handicapped Children, Inc. (Association), David Fialkowski and Gina Marie Coccia moved to certify this matter as a class action, which motion was not opposed. Petitioners have satisfied the prerequisites for a class action set forth in Pa.R.C.P. Nos. 1702, 1707–1709, and therefore an appropriate order granting certification accompanies this opinion. It must be emphasized that the Commonwealth had no objection to class certification, thereby obviating a class certification hearing under Pa.R.C.P. No. 1707.

recently had been receiving nonresidential "habilitative" [3] services provided by the City of Philadelphia. The petitioner class includes infants, children and young adults and persons with mild, moderate, severe and profound retardation. Class members have experienced or will experience the curtailment or elimination of four basic types of service: early intervention programs, family support services, vocational training and case management.

In order to understand the funding mechanism for these programs, a review of the relevant statutory authority is necessary.

Provision of services to the mentally retarded is governed by the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, Special Sess., P.L. 96, *as amended,* 50 P.S. §§ 4101–4704 (Act), which divides responsibility for providing services to the mentally retarded between state and county governments. The state, through the Department of Public Welfare, is obligated to "assure ... the availability and equitable provision of adequate ... mental retardation services for all persons who need them ...," and to assist the counties in fulfilling their duties. 50 P.S. § 4201. The counties are responsible for diagnosis, evaluation of needs, and development of a plan to meet those needs. 50 P.S. § 4301. The Act requires the Pennsylvania General Assembly to appropriate funds for such mental retardation services, 50 P.S. § 4201. It authorizes the Department to disburse these and supplementary federal funds. Section 4509(1) requires that the state provide ninety percent of funding for county programs authorized by the Act and approved by the Department such as the nonresidential services at issue here; the county must furnish the remaining ten percent. In the event of an allocation insufficient to fully fund approved grants, the Department is required

to distribute State funds among the counties by a formula reasonably designed to achieve the objectives of this act,

3. Habilitation involves the teaching and training of basic life and social skills.

provided however, that in such event the counties' financial obligations under this act shall be reduced in accordance with the same formula and the counties shall be required to provide only those services for which sufficient funds are available.

50 P.S. § 4509(5).

Philadelphia's programs have operated at a deficit since 1982. In each year, the City has found a way to avoid service cuts. In fiscal year 1988, for example, Philadelphia received a one-time supplemental grant from the Commonwealth. In the next fiscal year, the Association, representing the petitioner class, was granted an injunction in federal district court ordering the Commonwealth to provide Philadelphia approximately $5 million for nonresidential services. *Philadelphia Police and Fire Association for Handicapped Children, Inc. v. City of Philadelphia,* 699 F.Supp. 1106 (E.D.Pa.1988). This injunction was later reversed by the Third Circuit Court of Appeals, 874 F.2d 156 (3d Cir. 1989), but not before such payments were made. Despite these legal scrimmages and the courts' consistent perception of the irrationality of the Department's allocation methods, *see Alessi v. Department of Public Welfare,* 710 F.Supp. 127 (E.D.Pa.1989), and *Fritz v. White,* 711 F.Supp. 1350 (E.D.Pa.1989), the Department has continually refused to annualize an additional allocation based on the ongoing needs of Philadelphia's previously established nonresidential services. This Chancellor now turns to the present controversy.

Once again, the Commonwealth has allocated funds to Philadelphia for fiscal year 1990, which resulted in a projected deficit of $7,559,000. In response, Philadelphia has begun reducing and eliminating the instant nonresidential services. Petitioners seek injunctive relief to compel the Commonwealth to provide additional funding to cover these services.

A preliminary injunction may only be granted where

(1) the relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages;

(2) greater injury will occur from refusing the injunction than from granting it;

(3) the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct;

(4) the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and

(5) the petitioner's right to relief is clear.

*T.W. Phillips Gas and Oil Co. v. Peoples Natural Gas Co.*, 89 Pa.Commonwealth Ct. 377, 492 A.2d 776 (1985).

■ Upon consideration of the testimony, particularly that of Mrs. Leona Fialkowski and Mrs. Audrey Coccia, mothers of the two mentally retarded persons named in the complaint, this Chancellor finds that the requisite harm has been demonstrated. Mrs. Fialkowski and Mrs. Coccia each credibly and forcefully testified to developmental regression and rapid and starkly apparent loss of function sustained by their children when the habilitation programs were eliminated. The clients developed inappropriate behavior such as self-stimulation and other symptomatology. Each woman expressed her despair and discouragement over these consequences. Kathryn LeLaurian, Ph.D., Executive Director of the Philadelphia Early Childhood Evaluation Center, described the permanent effects associated with the exclusion of early intervention programs designed to stimulate and habilitate retarded persons at an early age. The increased risk and incidence of institutionalization was also competently established at hearing, a result which not only greatly decreases the quality of life and family, but which runs in direct opposition to the purposes of the Act. *See In Re Schmidt*, 494 Pa. 86, 429 A.2d 631 (1981). Clearly, the harm described by these witnesses is sufficiently serious and irremediable as to satisfy the *T.W. Phillips Gas* test.

██ At the heart of this matter is the question of whether the Department of Public Welfare has violated the terms of the act so as to create a clear right to relief on the part of the petitioners. The testimony of the Commonwealth witness, Joseph M. Gualtier, Director of the Bureau of Mental Retardation Program Support, is particularly telling. Mr. Gualtier testified that budget allocations were not based on the actual needs of Philadelphia programs, but rather were derived from adding an increment to the previous year's budget. No account was made for the fact that the previous years' budgets have repeatedly fallen short of actual need.

The testimony of Department Secretary John F. White, Jr., elicited in the federal district court proceedings last year,[4] corroborated Mr. Gualtier's description of the Department's budgetary process and further indicated that despite requests for additional funds to reduce or eliminate Philadelphia's deficit, no investigation, analysis or audit had been performed by the Department to assess the actuality or legitimacy of Philadelphia's funding needs, (White Transcript, pp. 45, 47, 69.)[5] Secretary White also testified as to a disturbing trend in which Philadelphia had not received the statewide average increase beginning in fiscal year 1983, resulting in a cumulative shortfall of $5.8 million as of fiscal year 1989. (White Transcript, p. 57.)

Upon review of this testimony, this Chancellor is deeply troubled by the Department's utter disregard of the *needs* of mentally retarded persons and their families who depend on nonresidential services and programs. These services and programs have been established by the City pursuant to its responsibilities under the Act, 50 P.S. § 4301–4305, and under the Act the state has a responsibility to fund ninety percent of this cost. 50 P.S. § 4509(1). The Commonwealth

4. The transcript of this testimony was submitted at hearing.

5. In fact, Secretary White testified that in response to a request from the Secretary of the Budget, he erroneously reported that Philadelphia contributes zero dollars beyond the ten percent matching funds when in fact it contributes $3 million above the requested amount. (White Transcript, p. 60.)

relies heavily upon Section 4509(5) of the Act to contend that funding shortfalls are envisioned by the Act, and in this and other cases the Department's responsibility is limited to distributing available funds "by a formula reasonably designed to achieve the objectives of this Act."

Although a final decision on this legal question must await disposition on the underlying petition for declaratory judgment pending before this Court, this Chancellor finds that, for the purposes of this proceeding, petitioners have established the requisite right to relief. The Commonwealth's interpretation of Section 4509(5) of the Act might be reasonable were it not for the uncontroverted fact that the Department has repeatedly failed to conduct a meaningful review of Philadelphia's nonresidential programs for the mentally retarded and thus submitted an inadequate budgetary request to the legislature. Therefore, this Chancellor concludes that the Department has breached its duty under the Act to assure the availability and equitable provision of adequate mental retardation services for all persons who need them. 50 P.S. § 4201.

Had the Department sought sufficient funds yet been denied by the General Assembly, the Department might be justified in providing the instant allocation. Had it rendered a formal determination that Philadelphia's programs were not functioning efficiently, that the shortfalls were due to waste of resources or otherwise were not necessary to further the purposes of the Act, the Department may rightly have left the City to its own devices in covering the projected deficits. The record, however, suggests none of the above scenarios. Instead, this Chancellor is confronted with which, at the very least, is a classic case of bureaucratic inertia which has allowed a clearly foreseeable crisis to occur without employment of statutorily authorized procedures and remedies. The Act plainly imposes on the Department the responsibility to maintain working relationships with governmental bodies and public and private agencies to assure maximum utilization of services and

facilities and to appoint such regional boards as may be necessary to advise and review mental retardation programs. 50 P.S. § 4201(5), (6), (8).

■ Accordingly, this Chancellor directs that the Department, within ten days of this Order, seek an interim grant of $7.559 million from the General Assembly to fund the nonresidential services at issue here. 50 P.S. § 4511. Such an interim appropriation specific to Philadelphia will not cause the Department to reduce amounts previously earmarked for other counties, as was its concern.[6]

This Chancellor finds that the City and its mental retardation authorities have not made sufficient efforts to forestall this crisis or obtain additional funds from federal or private sources. (Testimony of Kathy Sykes, Acting Director of Mental Retardation Services for the City of Philadelphia, N.T., 9/6/89, p. 139.) That such funds may not be readily available does not obviate the City's duty under the Act to insure the availability of adequate mental retardation services. 50 P.S. § 4301(d). Thus, the City does not come before this Court having fully honored its duties as envisioned by the statute. The City has sought equitable relief and must be prepared to "do equity," that is, to continue in-place programs for which there is a need and on which its citizens depend. The crying needs of and imminent harm to the individuals at issue here, unable to speak out for themselves, cannot be ignored while the intricacies of the General Assembly's budgetary process unfold.

Accordingly, this Chancellor, in the exercise of his equitable authority, additionally orders that the City and the appropriate agencies take all steps necessary to restore immediately those programs eliminated under the funding cuts. All expenditures necessary to accomplish this imme-

6. This Chancellor is also deeply concerned with the Department's repeated failure to annualize amounts necessary to eliminate this chronic funding shortfall. However, an order directing the Department to take such steps is beyond the scope of this proceeding.

diate relief are to be provided by the City. The Commonwealth, in its supplemental appropriation, shall seek funds necessary to cover this shortfall and reimburse the City for monies justifiably expended on reinstating and operating these programs.

## ORDER

1. Upon consideration of the motion for class action certification filed by the Philadelphia Police and Fire Association for Handicapped Children, Inc., David Fialkowski and Gina Marie Coccia, which motion has not been opposed by the Commonwealth, said motion is granted.

Petitioner class is certified as a class action on behalf of all people with retardation in Philadelphia living in their own homes who are receiving or until recently had been receiving, or are eligible to receive nonresidential habilitative services provided by the City of Philadelphia.

2. Upon consideration of petitioners' motion for preliminary injunction, respondents' answer, the evidence presented at hearing and legal argument, said motion is granted.

It is Ordered that within ten (10) days of this Order, the Department of Public Welfare shall submit a formal request for an interim grant of $7.559 million from the General Assembly to fund Philadelphia's nonresidential services for the mentally retarded.

3. It is further Ordered that the City of Philadelphia and the appropriate city agencies shall take all steps necessary to appropriate immediate relief funds to restore and operate nonresidential programs for the mentally retarded.

4. It is further ordered that the Commonwealth, in its interim appropriation, shall seek funds necessary to cover the shortfall and reimburse the City for monies expended to reinstate and operate these programs.

Jurisdiction retained.